UNITED STATES of America

v.

**Luis Felipe CALLEGO, Appellant.**

No. 09–2855.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) March 9, 2010.

Opinion filed: March 11, 2010.

George S. Leone, Esq., Office of United States Attorney, Newark, NJ, United States of America.

Kevin F. Carlucci, Esq., Office of Federal Public Defender, Newark, NJ, for Appellant.

Before: AMBRO, SMITH and MICHEL,* Circuit Judges.

### OPINION

MICHEL, Circuit Judge.

Luis Gallego [1] pled guilty to violating the conditions of his supervised release by con-

---

* The Honorable Paul R. Michel, Chief Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. Although the caption in this appeal refers to the Defendant as "Luis Felipe Callego," all other documents in this matter refer to him as "Luis Felipe Gallego." Accordingly, other than in the caption, this opinion uses the surname "Gallego" to refer to the Defendant.

spiring to import heroin into the United States. His supervised release was revoked, and on July 10, 2009 he was sentenced to 15 months' imprisonment. Gallego now appeals that sentence. We will affirm.[2]

## I.

In September 2002, Gallego, who was living at his parents' home in Bergenfield, New Jersey, received a telephone call from someone in Colombia. The unidentified caller threatened to kill Gallego's wife,[3] who was living in Colombia, if Gallego did not comply with the caller's demands. At the caller's direction, Gallego met a person known as "El Gordo" at the Cositas Ricas Bakery and Restaurant in Queens, New York. El Gordo gave Gallego $10,000 in cash and instructed Gallego to transport the cash to Cali, Colombia.

Gallego traveled to Colombia, where he delivered the cash and was given 1,291 grams of heroin to smuggle into the United States. On October 19, 2002, Gallego boarded a flight from Cali to John F. Kennedy Airport in New York. He had been instructed to travel from the airport to his parents' home and to await a telephone call from the person who would accept delivery of the heroin. Gallego never made it out of the airport. Instead, during a routine Customs inspection, the inspectors discovered the heroin Gallego was transporting, and he was placed under arrest.

On July 8, 2003, Gallego pled guilty to importation of heroin into the United States in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(b)(3). On September 16, 2003, he received a sentence of 63 months' imprisonment, plus three years' supervised release.

Shortly before being released from prison in November 2007 to begin serving his supervised release, Gallego contacted federal agents to discuss the possibility of providing third-party cooperation. In connection with these discussions, Gallego informed the authorities that a man named Michael Henao would be smuggling drugs into the United States from Colombia.

Gallego began serving his supervised release on November 26, 2007. Three days later, he tested positive for cocaine use in a random drug test, violating a condition of his supervised release. Because of this positive drug test, the federal agents negotiating Gallego's cooperation informed Gallego that they could no longer cooperate with him, that he should not participate in any criminal activity, and that he would not be protected from prosecution if he did engage in criminal activity.

On February 9, 2008, Michael Henao traveled from Bogota, Colombia, to Newark Liberty Airport in New Jersey, where he was apprehended by law enforcement authorities who discovered that he was carrying 2.4 kilograms of heroin. The agents also observed Gallego waiting in the arrivals terminal of the airport. When questioned, Gallego admitted that he was waiting for Henao to arrive and that he was being paid $1,000 to help Henao smuggle heroin from Colombia into the United States.

On June 17, 2009, Gallego pled guilty to violating a condition of his supervised re-

---

**2.** The District Court had jurisdiction under 18 U.S.C. § 3231 and 18 U.S.C. § 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "The abuse-of-discretion standard applies to both our procedural and substantive reasonableness inquiries",

discussed below. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir.2009) (*en banc* ).

**3.** Gallego was not legally married to the woman in question, but he has referred to her as his wife.

lease. In particular, the terms of his release prohibited him from "commit[ting] any further Federal, state, or local crimes," but Gallego admitted that he had "participate[d] in a conspiracy to import heroin into the United States" in violation of federal law. Gallego separately pled guilty to the conspiracy charge itself; his sentence for that charge is not at issue in this appeal.

Following Gallego's guilty plea, the district court sentenced Gallego for his violation of his supervised release. With a Grade A violation and a criminal history category of II, Gallego's Guidelines range was 15 to 21 months' imprisonment, with a statutory maximum term of imprisonment of 24 months. Following a hearing at which Gallego presented his arguments for leniency, the district court sentenced Gallego to 15 months' imprisonment, plus 21 months' supervised release. This represented a sentence at the bottom of the Guidelines range. Gallego timely appealed.

## II.

"Our responsibility on appellate review of a criminal sentence is limited yet important: we are to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir.2008). Our review proceeds in two stages. First, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Second,

we consider the totality of the circumstances to determine whether the sentence is substantively reasonable. *Tomko*, 562 F.3d at 567. "[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568.

We do not presume that a sentence is reasonable or that the district court properly applied all factors simply because the sentence falls with the Guidelines range. *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir.2006). Nevertheless, a sentence within the Guidelines range is less likely than an out-of-Guidelines sentence to be unreasonable. *Id.* at 331.

## III.

Gallego first argues that his sentence for violating his supervised release was procedurally unreasonable. Although he concedes that the district court properly calculated the Guidelines range and that he did not move for any departure from the Guidelines range, Gallego argues that the district court failed to meaningfully consider his argument for a modified sentence under the relevant § 3553(a) factors. In addition, Gallego argues that the district court's failure to apply the § 3553(a) factors resulted in a sentence that was substantively unreasonable, because the sentence was overly punitive. We address each of these arguments in turn.

Gallego's argument for procedural unreasonableness turns on his theory that the district court failed to give meaningful consideration to his explanation for why he participated in the February 2008 conspiracy to import heroin. At the sentencing hearing, Gallego offered two reasons why he went to the Newark airport to pick up Henao. First, Gallego's attorney stated that Gallego believed Henao would never

make it through the Customs inspection, so Gallego would not actually be required to transport Henao from the airport to the place where he was to deliver the heroin. Second, Gallego's attorney argued that Gallego believed that his efforts at cooperation with federal agents before his positive drug test had gotten him too far into the scheme to back out without alerting the other members of the conspiracy to his cooperation with the authorities. Gallego himself also testified at this hearing and stated that he had provided information to the authorities that allowed them to apprehend Henao, and Gallego believed that he should be sentenced leniently because of this.

On appeal, Gallego argues that, because these arguments were presented below, and because the district court had discretion to sentence Gallego to less prison time than called for under the Guidelines, the district court's within-Guidelines sentence demonstrates that the court failed to meaningfully consider Gallego's mitigation argument. We disagree. Gallego is of course correct that, a district court may "vary downward from the advisory guideline range." *Spears v. United States,* —— U.S. ——, 129 S.Ct. 840, 842, 172 L.Ed.2d 596 (2009). But *Spears* was limited to cases in which the district court disagreed with the advisory Guidelines range. *Id.* In the absence of any disagreement with the Guidelines range, and in the absence of any mitigating circumstances found sufficient by the district court, a within-Guidelines sentence is likely to be reasonable. *Cooper,* 437 F.3d at 329.

Here, the district court did not disagree with the Guidelines range; instead, it imposed a within-Guidelines sentence. Under *Spears,* then, the district court was not compelled to depart from the Guidelines range unless it found that Gallego's story both was believable and warranted a downward departure. The district court's failure to grant the downward departure is of course consistent with Gallego's theory that the district court did not even give Gallego's story meaningful consideration. But it is equally consistent with the theory that the district court considered the story and found it either not believable or not worthy of a downward departure from the bottom of the Guidelines range. Additional evidence supports this latter theory. During its questioning of Gallego, the district court stated "I'm not buying this story too much" and "You seem to be making up excuses ex post facto." These statements are much more consistent with the idea that the district court found Gallego's story not to be believable than with the theory that the district court failed even to consider Gallego's story.

Essentially, Gallego's argument is as follows: given that Gallego presented a story that, if believed, might have resulted in a finding of mitigating circumstances warranting a downward departure from the Guidelines range, and given that the sentencing court failed to grant such a downward departure, the sentencing court must not have even considered Gallego's story. This conclusion is not logically compelled by the given premises. Gallego simply ignores the possibility that his story might have been considered but not believed, and the district court's statements during the sentencing hearing demonstrate that this was in fact the case.

▮ Related closely to Gallego's argument that the district court failed to consider his proffered mitigation argument is Gallego's assertion that the district court failed to apply the relevant § 3553(a) factors before deciding whether to depart from the Guidelines range. Under 18 U.S.C. § 3583(e), a court is justified in revoking supervised release only "after considering the factors set forth in section

3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." The failure to consider relevant factors from this list before revoking supervised release would render procedurally unreasonable the sentence imposed. But the district court is not required to " 'discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account.' " *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir.2007) (quoting *Cooper*, 437 F.3d at 329). Gallego insists that the district court failed to consider any of the § 3553(a) factors, but we disagree. The record makes clear that the district court, while not making express findings as to each factor, did consider each of them.

Section 3553(a)(1) requires the sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Here, the district court described the offense: "[Gallego] violated his term of supervised release .... a new arrest involved meeting a courier who had just imported heroin." The court also described the history and characteristics of the defendant: "Mr. Gallego is a 24–year old male who ... tested positive for cocaine just three days after being released from custody.... His original offense involved the offense of importing heroin." The district court thus clearly considered the § 3553(a)(1) factor.

Under section 3553(a)(2)(B), the sentencing court must consider "the need for the sentence imposed ... to afford adequate deterrence to criminal conduct." The district court considered this factor when it stated that "[Gallego's] actions seem to show that he was not altering his criminal activity." Obviously, a defendant who has committed crimes in the past and continues to commit similar crimes must be sentenced more harshly than a first offender or someone who has largely reformed. The district court's statement was also reasonable, given that both Gallego's earlier crime and the crime for which Gallego was being sentenced involved the importation of heroin from Colombia.

Section 3553(a)(2)(C) requires the sentencing court to consider "the need for the sentence imposed ... to protect the public from further crimes of the defendant." As with § 3553(a)(2)(B), the district court's statement that "[Gallego's] actions seem to show that he was not altering his criminal activity" demonstrates consideration of this factor. Someone who continues his criminal past by committing similar crimes is clearly a greater danger to the public than someone who only briefly stepped off the path of lawfulness. This factor requires the sentencing court to take into account the danger to the public, and it appears from the district court's statements that it did so.

Under section 3553(a)(2)(D), the sentencing court must consider "the need for the sentence imposed ... to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The district court did not find any special need for education, vocational training, or medical care. But the court did find a need for ongoing drug testing and addiction treatment, and submission to testing and treatment was made a special condition of Gallego's sentence.

Section 3553(a)(4) requires the sentencing court to consider the relevant range of sentences proposed in the Guidelines. As discussed above, Gallego admits that the district court properly calculated the Guidelines range and considered it in imposing sentence.

Under section 3553(a)(5), the sentencing court must consider "any pertinent policy

statement ... issued by the Sentencing Commission." Gallego has not pointed us to any policy statements issued by the Sentencing Commission that are relevant to this case but that were not considered by the district court, and we can find none.

Section 3553(a)(6) requires the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Gallego has failed to explain how his sentence at the bottom of the Guidelines range risks a violation of this factor by creating sentencing disparities.

Under section 3553(a)(7), the sentencing court must consider "the need to provide restitution to any victims of the offense." The district court did not order restitution, but it is not clear to us that there were any victims of Gallego's crime to whom restitution could be made, nor has Gallego identified any. Thus, Gallego has not presented any cogent argument for how this factor should have been taken into account by the district court.

Thus, we disagree that the district court failed to apply the § 3553(a) factors. Our review of the record confirms that the District Court gave "rational and meaningful" consideration to the relevant § 3553(a) factors in imposing its sentence. *United States v. Grier*, 475 F.3d 556, 571 (3d Cir.2007) (*en banc*).

■ To the extent Garcia challenges the substantive reasonableness of his sentence, we reject that challenge, as we cannot say that "no reasonable sentencing court would have imposed the same sentence on th[is] particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir.2009) (*en banc*). Under the circumstances, we con-

clude the sentence was entirely reasonable. Accordingly, we will affirm that sentence.