NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3923
_____

UNITED STATES OF AMERICA

v.

RONALDO C. EDMUND,
a/k/a Ninety

Ronaldo C. Edmund,
                                                Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-11-cr-00063-001)
District Judge:  Hon. Richard G. Andrews
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2014

Before:   FISHER, JORDAN, and HARDIMAN *Circuit Judges*.

(Filed September 16, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

        Ronaldo Edmund appeals the sentence imposed by the United States District Court

for the District of Delaware.  For the following reasons, we will affirm.

## I.  Background

In 2011, Edmund was charged with multiple counts of violating federal law based on his leadership role in a drug smuggling and distribution ring that operated in Wilmington, Delaware.  Over the three-year period covered by the indictment, Edmund and co-conspirator Kelvin Cook recruited approximately nineteen couriers to travel to Panama and bring back large quantities of cocaine.  Once the drugs entered the state, Edmund and Cook sold them at different locations in Wilmington.  In 2010, the operation expanded to include smuggling heroin from Afghanistan via Texas.

In 2011, the Drug Enforcement Agency ("DEA") obtained authorization to wiretap phones belonging to Edmund.  The wiretaps revealed phone calls between Edmund and various co-conspirators, including conversations detailing three occasions when Edmund sent couriers to Panama.  Based on the wiretaps, the DEA learned that Edmund was scheduled to pick up a certain courier in Texas and drive her back to Delaware.  A Delaware State Police officer stopped Edmund on I-95 and discovered approximately 550 grams of heroin in the courier's hair.[1]  The officer then arrested Edmund, who, in response to a request for identification, provided false information to the police.[2]  Also, during the investigation, Edmund sold cocaine and heroin to DEA confidential sources.  In total, the United States Probation Office's Presentence

---

[1] The DEA investigation revealed that couriers had begun to use hair weaves to hide the smuggled drugs.

[2] The false name given by Edmund matched the name he used to transfer money in connection with the Panama smuggling operation.

Investigation Report ("PSR") stated that "approximately 14,100 grams of cocaine and 6,390 grams of heroin [were] attributable to Ronaldo Edmund." (PSR ¶ 47.)

On June 6, 2012, Edmund pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and one count of conspiracy to import into the United States five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(1)(A), (B), and 963, and 18 U.S.C. § 2. The PSR calculated Edmund's base offense level at 34 and recommended a two-point enhancement under the United States Sentencing Guidelines Manual (the "Guidelines") § 2D1.1(b)(14)(C) because he was eligible for an enhancement under § 3B1.1 (due to his leadership role) and he was "directly involved in the importation of a controlled substance." (PSR ¶ 58.) The PSR also recommended an additional three-point enhancement pursuant to § 3B1.1(b) because Edmund was a manager or supervisor of criminal activity involving five or more participants. A three-point reduction for acceptance of responsibility brought his total offense level to 36. Finally, because Edmund had no criminal history, he was categorized as being in Criminal History Category I. The PSR therefore calculated the Guidelines range for his sentence at 188 to 235 months of imprisonment.

Before sentencing, Edmund filed a Sentencing Memorandum with the District Court requesting a variance from that Guidelines range based on, *inter alia*, his acceptance of responsibility, lack of criminal history, immigration status, and family responsibilities. In addition, it came to Edmund's attention that his co-conspirator, Cook,

3

who had a similar leadership role in the smuggling and distribution ring, received a sentence of 180 months' imprisonment. Cook's calculated Guidelines range was 235 to 292 months, due to his higher Criminal History Category. Therefore, Cook's sentence reflected a downward variance of roughly 55 months.[3] Thus, at the sentencing hearing, in addition to re-emphasizing the issues presented in his Sentencing Memorandum, Edmund argued that he should receive a downward variance "in the same category" as Cook, specifically, a variance from the Guidelines minimum of 188 months' imprisonment to the statutory minimum of 120 months' imprisonment. (J.A. at 80.) He argued that, pursuant to 18 U.S.C. § 3553(a)(6), which calls for avoiding sentencing disparities, he should receive a sentencing variance similar to that received by Cook, who was charged with "similar conduct" but had a different criminal record. (J.A. at 80.)

In the course of hearing the parties' arguments regarding Edmund's variance request and the factors set forth in § 3553(a), the District Court questioned the parties about the sentence Cook was given. The Court asked the government: "[I]s there a good reason for me to sentence[] Mr. Edmund to more time than I sentenced Mr. Cook?" (J.A. at 91.) The government responded that it was only requesting a slightly higher sentence for Edmund, 188 months to Cooks' 180 months of imprisonment.[4] In reviewing the

---

[3] The government had not opposed Cook's request for a variance from 235 months' to 188 months' imprisonment. The District Court imposed a sentence of 180 months.

[4] During its presentation to the Court, the government stated that it had a "strong belief" that – regardless of the activity of co-defendants, including Cook – the "drugs don't come into the country, at least with respect to this conspiracy, … without [Edmund's] involvement." (J.A. at 85.)

4

various reasons proffered for Edmund's variance request, the Court noted that "[t]he other thing I might be inclined to consider" for a variance was the "concern that to some extent the sentence I gave Mr. Cook may be a benchmark that I ought to take into account when sentencing Mr. Edmund." (J.A. at 97.) The Court then proceeded to address each of the factors set forth in 18 U.S.C § 3553(a). Specifically, with regard to factor six, the Court noted that, given Cook's sentence, Edmund's sentence should be 180 months, because Edmund "ought to get the same sentence [Cook] got." (J.A. at 102.) The District Court sentenced Edmund accordingly, and Edmund timely appealed.

## II.     Discussion[5]

Edmund argues that "it was unreasonable and an abuse of discretion for the [D]istrict [C]ourt to limit Mr. Edmund's Sentencing variance to 8 months when a similarly situated yet more dangerous co-defendant was given a 55 month Sentencing variance." (Appellant's Br. at 33.) More specifically, Edmund contends that the District Court did not properly consider the fact that, "although he and Co-Defendant Kelvin Cook had extremely similar levels of involvement in the instant drug importation conspiracy, they had vastly different criminal histories." (*Id.* at 28-29.) We disagree with the assertion that there was an abuse of discretion.

As an initial matter, we must emphasize that there was not a sentencing disparity as outlined under § 3553(a)(6). *See* 18 U.S.C. § 3553(a)(6) (providing for "the need to

---

[5] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review the sentencing decision of a district court for abuse of discretion, alert to procedural error and examining the sentence for substantive reasonableness. *United States v. Negroni*, 638 F.3d 434, 443 (3d Cir. 2011).

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Edmund and Cook received the same sentence for the same charges. In fact, the District Court granted a "small downward variance" for Edmund in large part because of a perceived "need to avoid unwarranted disparity." (J.A. at 102.) Thus, we focus on Edmund's argument that it was unreasonable for the District Court to limit Edmund's variance to eight months, given the sentence Cook received.

We review a sentencing decision "to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008). To determine reasonableness, we first review whether the district court committed a procedural error, including, "failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (internal quotation marks omitted). In this review, our focus is on whether there was a "rational and meaningful consideration of the § 3553(a) factors," which requires a district court to "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012) (internal quotation marks omitted). Once we have established that there was no procedural error, we will affirm a district court's sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

6

Here, there is ample evidence in the record that the District Court properly considered each of Edmund's variance arguments – including his argument regarding Cook's sentence and its effect on his own – and provided a full explanation of the reasoning with regard to the factors set forth in § 3553(a). The Court expressly addressed the influence that Cook's sentence exerted, including concern about unwarranted disparity, when it noted that it "might be inclined to consider a variance" based on Cook's sentence as "a benchmark that … ought to [be taken] into account." (J.A. at 97.) As to Edmund's argument that he had a lesser criminal history than Cook, the District Court noted in its review of his personal characteristics that his lack of prior convictions was "relatively unusual for a person who's [been] convicted" of the crimes Edmund pled guilty to but that, regardless of formal charges, Edmund had "essentially, … made a living as [a] drug dealer for the last 20 years." (J.A. at 101.) Given the record before us, the District Court adequately addressed each factor and thus did not abuse its discretion in fashioning Edmund's sentence.

We likewise conclude that Edmund's below-Guidelines sentence was not substantively unreasonable such that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

III.   **Conclusion**

For the foregoing reasons, we will affirm the sentence imposed by the District Court.

7