NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2789
_____

UNITED STATES OF AMERICA

v.

SEAN DONALD PREMOCK,
a/k/a Ethan Premock,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Case No. 2-16-cr-00272-001)
District Judge:  Hon. Paul S. Diamond
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 14, 2021

Before: McKEE, JORDAN, and FUENTES, *Circuit Judges*

(Opinion filed: September 16, 2021)

_____

OPINION[*]
_____

FUENTES, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Sean Premock appeals from the District Court's order and judgment sentencing him to 120 months' imprisonment for numerous counts of mail, wire, securities, and investment advisor fraud. Because this sentence represents a 23-month upward variance from the one recommended under the United States Sentencing Guidelines, he argues that the District Court abused its discretion in imposing it. For the reasons that follow, we will affirm.

## I.

Premock pled guilty to nine counts of mail fraud in violation of 18 U.S.C. § 1341, nine counts of wire fraud in violation of 18 U.S.C. § 1343, one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, and one count of investment advisor fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-17. Premock owned and operated several investment companies, and from approximately 2009 through 2016, he operated a "Ponzi" scheme through which he defrauded his clients, most of whom were elderly, out of approximately $1.3 million.[1] To carry out this scheme, Premock commingled the funds he collected from clients, used them to pay for personal expenses, and also used those funds to make payments to existing clients to give the false impression that their investments were profitable. In the process, Premock falsified his clients' account statements, misrepresenting returns and providing fake addresses for himself and his companies, and at one point, used an alias of "Ethan Premock" in an attempt to hide a previous censure

---

[1] Specifically, Premock received approximately $1.3 million of funds from his clients but only invested around half of this amount. Because those investments failed and the other half of the funds were misappropriated, the pre-sentence report concluded that the scheme resulted in total actual losses of over $1 million.

from the Financial Industry Regulatory Authority. Based on the nature of the crimes and other factors, the District Court imposed the above-Guidelines sentence of 120 months. The thrust of Premock's argument on appeal is that the District Court erred in failing to consider mitigating evidence, including familial testimony regarding his character and expert testimony about his motivations for the crimes.

Although Premock focuses on the mitigating evidence he introduced at sentencing, the District Court also partially premised its upward departure on Premock's conduct throughout the proceedings, which was consistent with the deceptive nature of his crimes. Following his indictment, Premock was initially released on his own recognizance, but the District Court later decided to condition his release on $10,000 cash bail, citing Premock's Canadian citizenship and out-of-state residence in Florida, as well as his failure to present evidence showing that he would not flee. Premock then unsuccessfully filed two motions for release pending sentencing, offering small sums of cash and his home equity as additional security. His home, however, had already been foreclosed on and was encumbered by tax liens. Essentially, Premock sought to secure his release by offering property he no longer owned, contradicting his prior representations to the Court implying that he had sufficient equity to secure his release.

Premock continued to frustrate the proceedings below by filing a series of four *pro se* motions prior to sentencing, even though he had counsel. He first requested a hearing pursuant to Federal Rule of Criminal Procedure 11, proclaiming his innocence and requesting to withdraw his guilty plea, claiming (among other things) that numerous errors were made in the bargaining process and the plea memorandum was inaccurate. He then

filed a motion to dismiss the indictment under Federal Rule of Criminal Procedure 12, arguing that it was both legally and factually insufficient to support a conviction. The District Court denied both, explaining that Premock was not entitled to file *pro se* motions while represented by counsel. Premock then asked the District Court to allow him to proceed *pro se* or require his counsel to adopt his *pro se* motions so they could be considered by the Court. Shortly after, the District Court held a status hearing regarding the potential withdrawal of his guilty plea, and Premock's counsel represented that he needed more time to determine whether his client's *pro se* motions were meritorious and should be adopted. Though Premock's counsel later suggested that he intended to file a motion raising at least some of the arguments made in the *pro se* motions, he apparently never did.

Following the first two *pro se* motions, new private counsel entered an appearance on Premock's behalf. This concerned the District Court, as Premock had been previously appointed a public defender by swearing that he had no assets. Thereafter, the Government and Premock entered into a post-conviction sentencing agreement in which they stipulated to several items and adjustments, including: (1) the total amount of monetary loss Premock intended to cause; (2) a four-point enhancement because Premock falsely held himself out as a licensed investment adviser; (3) a two-point enhancement based on the victims' vulnerability; and (4) a three-level downward adjustment for acceptance of responsibility. At his first sentencing hearing, however, Premock denied that he intended to defraud his victims, contrary to the terms of his stipulation with the Government, and, when questioned by the District Court, refused to admit that he had falsely claimed innocence in his previous

*pro se* motions. As a result, the District Court ended the hearing so that the Government could reevaluate whether it still believed Premock deserved a three-level reduction for acceptance of responsibility.

Following that hearing, Premock filed two more *pro se* motions seeking release pending sentencing, both of which raised similar arguments. He again disputed the facts underlying his offenses (despite having already pled guilty) and claimed that he needed to travel to the Southern District of Florida to hire new counsel because he lacked faith in attorneys in the Eastern District of Pennsylvania. The District Court denied the first motion on the grounds that Premock remained a flight risk and the second as an attempt to relitigate his earlier argument.

The District Court later learned that Premock's new counsel had been arrested for an unrelated matter, and informed Premock that he needed to retain new counsel or represent himself. Premock asked for thirty days to find a new attorney, again stating that he wanted to "use the attorneys that are familiar with the case in Florida."[2] The District Court again denied the request. By the next hearing, Premock had not retained counsel and once again claimed he was indigent, so the District Court appointed new counsel.

The next month, Premock sent a *pro se* letter to the District Court, once again requesting release pending sentencing, this time on the grounds that he needed to retrieve documents pertinent to the case that were located in Florida. The District Court again denied his request, and Premock was finally sentenced more than three years after he

---

[2] Supp. App. 496.

5

entered his guilty plea. The District Court granted the Government's request for an upward departure based on the nature of the crimes and Premock's character, and sentenced him to 120 months' imprisonment and three years of supervised release, and ordered him to pay over $1 million in restitution. This appeal followed.

## II.

We review Premock's sentence for abuse of discretion, and will disturb the District Court's order only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [D]istrict [C]ourt provided."[3] "[T]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."[4] To meet his burden, a defendant must generally do more than assert that the sentencing court failed to give "mitigating factors the weight a defendant contends they deserve."[5]

Premock contends that his sentence is substantively unreasonable, and that the District Court abused its discretion by refusing to properly consider "mitigating evidence" as required by § 3553(a).[6] We disagree. The record demonstrates that the District Court considered the relevant § 3553(a) factors—both aggravating and mitigating. It considered the nature and circumstances of Premock's offenses, including that he "defrauded his

---

[3]   *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009).

[4]   *Id.* (internal quotation marks omitted) (requiring district courts to "make an individualized assessment" based on the facts presented and provide a sufficient explanation for the sentence imposed).

[5]   *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007).

[6]   Appellant's Br. at 19.

clients, most of whom were elderly, out of their life savings."[7] The District Court further noted the deception involved in Premock's crimes, including the commingling of funds, failure to inform his clients that he had been stripped of his licensure, creation of false account statements, and adoption of an alias to prevent future clients from identifying his malpractice.[8]

The District Court also considered Premock's personal history and characteristics, including his delay tactics prior to sentencing and repeated filing of frivolous motions. It recognized that Premock continued his scheme for nearly seven years, made repeated misrepresentations to the District Court regarding the value of his home while seeking release, proclaimed both legal and factual innocence after having pled guilty, and went great lengths to hide his misdeeds from his clients. Premock's conduct, both before and after indictment, led the District Court to characterize him as an "inveterate conman, [a] thief, and [a] liar," deserving of an enhanced sentence.[9]

As mitigating evidence, Premock first introduced testimony (including that of an expert) regarding the "Carr-Miller" and "DLG" schemes that his firm previously fell victim to. Investment companies Carr-Miller and DLG perpetrated their own frauds against their clients, including Premock's firm, by selling worthless products. Premock had purchased $1.2 million of notes from those entities using client funds. When the products turned out

---

[7]    App. 100.

[8]    *See* 18 U.S.C. § 3553(a) (requiring the courts to consider the "nature and circumstances of the offense and the history and characteristics of the defendant," as well as the "need for the sentence imposed . . . to reflect the seriousness of the offense.").

[9]    App. 177.

to be worthless and Premock's investment was lost, he contends that he became very distressed. He now argues that he would not have committed his crimes if he had not been previously defrauded himself, and that his scheme was "an ill-considered response to the massive fraud first perpetrated upon him."[10] Based on the other evidence against him, including that he used client funds to pay personal bills, the District Court did not find this argument credible. The District Court also explained that the expert's testimony regarding the Carr-Miller/DLG fraud was irrelevant—while the expert opined at length regarding the nature of that scheme, his testimony did nothing to lessen Premock's culpability.[11]

The District Court also heard testimony from Premock's family about his character. Premock's father and uncle both testified that he was a good person who had meant no harm. His wife likewise characterized him as a victim of circumstance, whose sole motivation was to repay his clients for the money lost in the Carr-Miller and DLG schemes, regardless of the fact that he also misappropriated his own clients' funds to pay personal expenses. The District Court found the family members' testimony not credible, seemingly motivated by their own personal biases toward Premock.

Premock also argues that his 120-month term creates an unnecessary sentencing disparity amongst like offenders.[12] Premock cites many cases that he claims are

---

[10]   Appellant's Br. at 20–21. Premock also notes that prior to his crimes, he had a near-decade history of serving his clients honestly.

[11]   *See* App. 106 (concluding that the testimony of Premock's expert witness, which primarily centered on Premock's FINRA violations and the Carr-Miller and DLG frauds, was "either irrelevant or incredible.").

[12]   *See* 18 U.S.C. § 3553(a)(6).

illustrative, each of which purportedly involve a more lenient sentence than Premock received, despite that those defendants' crimes were more egregious. But the District Court justified its decision to vary upwards under the unique circumstance of this case, including not only the nature and gravity of the scheme itself, but Premock's history of "dishonest [and] manipulative conduct" throughout the judicial process.[13] The cases cited in Premock's briefing do not compel a different result under these facts.[14] Premock defrauded his clients of over $1 million, and many of his victims suffered, and continue to suffer, medical ailments and other injuries from the stress Premock has caused in their lives.[15] The District Court did not abuse its discretion in concluding that Premock's crimes were

---

[13]     App. 177.

[14]     For instance, Premock cites *United States v. Duliga*, 204 F.3d 97 (3d Cir. 2000), wherein the defendant was sentenced to 33 months of incarceration for conspiracy to commit mail and wire fraud resulting in the loss of $1.2 million dollars. While Premock correctly notes the sentence imposed in that case falls well below his own, nothing in that case suggests that the defendant was subject to the various enhancements that were stipulated to or otherwise applicable here, or that the *Duliga* defendant made repeated misrepresentations to the sentencing court. *See id.* at 100. For further example, Premock characterizes *United States v. Boyle*, 723 Fed. App'x 111 (3d Cir. 2018), in which the defendant was sentenced to 78 months' imprisonment for similar crimes resulting in client losses of around $400,000, as creating a sentencing disparity. He suggests that the defendant in *Boyle*, who used client funds to purchase a bar, was somehow much more culpable than him, yet received a lower sentence. *See id.* at 112. Because of the starkly different facts in this case, we do not find these comparisons compelling.

[15]     For instance, following a $500,000 loss, one of Premock's victims experienced a stress-induced stroke, requiring emergency neurosurgery. Other victims suffered or continue to suffer from depression and anxiety in connection with the loss of their life savings.

9

"much worse" than in other fraud cases, justifying the imposition of an enhanced sentence.[16]

We have considered the remainder of Premock's arguments and find them without merit. The record reflects that the District Court meaningfully considered the applicable § 3553(a) factors. Premock's unsubstantiated assertions that the District Court failed to give purportedly mitigating evidence sufficient weight does not render his sentence unreasonable.[17] The District Court did not err in imposing the above-Guidelines sentence in this case.

## IV.

For these reasons, we will affirm the judgment of the District Court.

---

[16]   App. 108.

[17]   *See Bungar*, 478 F.3d at 546.