**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1797
_____

UNITED STATES OF AMERICA

v.

JORDAN DONYELL HARMON,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:22-cr-00110-001)
District Judge: Honorable Colm F. Connolly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 3, 2025

Before: MATEY, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed:  May 7, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Jordan Harmon challenges the substantive reasonableness of his 36-month sentence for making a false statement to acquire a firearm. For the following reasons, we will affirm the judgment of sentence.

**I**

Between April 2020 and the summer of 2021, Harmon purchased 19 firearms from licensed firearm dealers. One of those purchases served as the basis for the indictment in this case.

On July 21, 2020, Harmon purchased a Smith & Wesson .40-caliber semi-automatic pistol from a gun store in Delaware for $420. On the same date, law enforcement intercepted telephone calls between R.D. (who was dating Harmon's sister) and another individual, D.C., who was the subject of a government wiretap. About ten minutes before Harmon purchased the Smith & Wesson, R.D. told D.C. he was "still waiting" for someone to arrive, and D.C. responded by saying he would not let R.D. "pay[] no outrageous for nothing." PSR ¶ 13. And 30 minutes after Harmon purchased the Smith and Wesson, R.D. told D.C. that someone "just got a nice [] S and W" and was asking $700 for it. PSR ¶ 14.

Less than 20 hours after Harmon purchased the Smith & Wesson from the gun store, law enforcement arrested D.C. in Dover, Delaware, and recovered the Smith & Wesson pistol from him.

Nearly two years later, Delaware police arrested Harmon for the straw purchase of the pistol. Harmon initially denied giving or selling the Smith & Wesson to anyone, and he gave other false answers to investigators' questions. When he allowed investigators to search his cell phone, they found text messages between Harmon and R.D. In those text messages, the two men discuss the sale of a firearm and exchange greetings associated with the Crips gang, which was active in Dover.

In November 2022, a federal grand jury returned an indictment charging Harmon with making a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) & 924(a)(2). In a written plea agreement, Harmon pleaded guilty to the offense and agreed to forfeit any interest in the 19 firearms that he had purchased. He acknowledged the statutory maximum term of imprisonment was 10 years, and the government retained the right to make whatever sentencing recommendation it believed appropriate.

By the date of his sentencing, Harmon no longer possessed any of the firearms he purchased, but law enforcement had recovered seven of them. All seven were recovered during investigations of shootings or other criminal activity, and one was used in a shooting the day after Harmon purchased it.

The Probation Office calculated an advisory Guidelines range of 12–18 months' imprisonment, based on a total offense level of 13 and a Criminal History Category of I. Harmon was in the lowest criminal history category because he had only one criminal-history point (from a conviction that post-dated his arrest in this case). His total offense level included a four-level enhancement for an offense involving between 8 and 24

firearms, U.S.S.G. § 2K2.1(b)(1)(B), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1.

At the sentencing hearing, a police detective testified about several indications that Harmon was associated with members of the Crips gang. The detective testified that certain phrases in Harmon's text messages are greetings used by Crips members; social media photographs show Harmon making a hand gesture used by the Crips; and Harmon has a tattoo of a handicap symbol, which is associated with the Crips. He also testified that R.D. is a member of the Crips, and Harmon and R.D. appeared together at a gang meeting.

The District Court adopted the advisory Guidelines range of 12–18 months' imprisonment, and then addressed the government's motion for an upward variance to at least 36 months' imprisonment. After hearing arguments from the parties, the District Court granted the variance. It said that the advisory Guidelines range did not capture the seriousness of the offense in two ways. First, the enhancement for the number of firearms "applies to all the different gun crimes" and does not capture the severity of placing 19 guns on the street. App. 191. And this offense involved Harmon "putting guns in a dangerous community, knowing that the audience with whom he is speaking about the offense are gang members, or at the very least, people who want to emulate known dangerous gangs." App. 191–92. Second, the Guidelines range did not reflect that seven of the guns Harmon purchased were later seized in connection to crimes, including shootings.

The District Court acknowledged Harmon's lack of criminal history at the time of the offense, but it said Harmon had not taken advantage of the opportunities his supportive parents made available to him. It also said it needed to deter Harmon from committing crimes in the future and deter members of the public who have clean criminal records from becoming straw purchasers for gang members in the increasingly crime-riddled city of Dover. It made several comments about its view that gang activity and gun violence have "ruined Dover" making it "no longer a safe place to go out and walk. . . . It's a tragedy." App. 192.

The District Court also opined that Harmon was "essentially gun trafficking," App. 195, and had not shown remorse for his conduct. It concluded, "I have to send a message of 36 months," and imposed that term of imprisonment. App. 195. Harmon timely appealed.

**II**[1]

When a defendant challenges the substantive reasonableness of his sentence, we review the sentence for abuse of discretion. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). Under this deferential standard, we will affirm the sentence unless the defendant demonstrates that "no reasonable sentencing court would have imposed the same sentence on [him] for the reasons the district court provided." *Id.* at 568.

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

Harmon argues that his 36-month sentence is unreasonable because the District Court placed too much weight on the seriousness of the offense and the need to afford adequate deterrence. As to the seriousness of the offense, he argues that the four-level enhancement to his total offense level already accounted for the number of firearms involved in the offense, and that the parties agreed before sentencing that a separate firearm-trafficking enhancement did not apply. As to deterrence, Harmon contends that the District Court put too much weight on the dangers and violence in Dover and the need to deter gun trafficking generally. He argues that "[i]mposing a one hundred percent upward variance to deter gun trafficking generally in a case that does not involve gun trafficking is unreasonable." Opening Br. at 19.

We cannot say that no reasonable sentencing court would have imposed a 36-month sentence on Harmon for the reasons the District Court provided. The record as a whole "reflects rational and meaningful consideration" of the 18 U.S.C. § 3553(a) factors, which is "the touchstone of reasonableness." *Tomko*, 562 F.3d at 568 (cleaned up). When the District Court addressed the seriousness of the offense, it reasonably considered that the enhancement for the number of firearms involved in the offense did not differentiate between Harmon's conduct and less culpable conduct involving the same number of firearms. For instance, the same enhancement would have applied if Harmon had possessed 19 firearms. *See* U.S.S.G. § 2K2.1(b)(1) (providing increased offense levels for the unlawful receipt, possession, or transportation of multiple firearms). But here, the District Court found that Harmon put 19 firearms onto the streets; Harmon discussed those firearm transactions with people who, at a minimum, emulated a violent

6

street gang; and seven of the firearms Harmon put onto the streets were later linked to criminal activity. The District Court also observed that no one knows what harms were caused by the remaining 12 unaccounted-for firearms. And while the District Court heavily weighed the need for general deterrence, that weight was not unreasonable on this record. That Harmon's conduct did not qualify for a firearm-trafficking enhancement does not undermine the District Court's rationale for seeking to deter straw purchasing.

\* \* \*

For the reasons set forth above, we will affirm the District Court's judgment.